# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| LaDAWNDA SMITH, *et al.* | ) | |
| | ) | CASE NO: 4:20-cv-000579 |
| Plaintiffs, | ) | |
| | ) | JUDGE PATRICIA ANN GAUGHAN |
| v. | ) | |
| | ) | **DEFENDANT OFFICERS MOSTELLA,** |
| THE CITY OF YOUNGSTOWN, *et al.* | ) | **FLETCHER, AND SPIVEY'S MOTION** |
| | ) | **FOR JUDGMENT ON THE** |
| Defendants. | ) | **PLEADINGS** |

Defendant Officers Malik Mostella, Jay Fletcher, and Daniel Spivey (collectively "Patrol Officer Defendants"), by and through undersigned counsel, pursuant to Fed.R.Civ.P 12(c) hereby move the Court for Judgment on the Pleadings as the Plaintiffs have failed to state a claim upon which relief can be granted. A Memorandum in Support of this Motion is attached hereto and incorporated herein. Additionally, the Patrol Officer Defendants join in and incorporate by reference the arguments asserted in *Motion for Judgment on the Pleadings of Defendant City of Youngstown* and *Supplement to Motion for Judgment on the Pleadings* (Doc. Nos. 26 and 28) and *Defendants Rivera and Kennedy's Motion for Judgment on the Pleadings* (Doc. No. 27).

Respectfully submitted,

*/s/ Audrey K. Bentz*
STEVEN G. JANIK (0021934)
AUDREY K. BENTZ (0081361)
ROBERT T. GLICKMAN (0059579) Of Counsel
JANIK L.L.P.
9200 South Hills Blvd., Suite 300
Cleveland, Ohio 44147
Tel: (440) 838-7600 * Fax: (440) 838-7601
Email: Steven.Janik@janiklaw.com
　　　　Audrey.Bentz@janiklaw.com
　　　　Robert.Glickman@janiklaw.com

*Attorneys for Defendants Officer Malik Mostella, Officer Jay Fletcher, and Officer Daniel Spivey*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LaDAWNDA SMITH, *et al.* | ) |
| | ) CASE NO:  4:20-cv-000579 |
| Plaintiffs, | ) |
| | ) JUDGE PATRICIA ANN GAUGHAN |
| v. | ) |
| | ) **MEMORANDUM IN SUPPORT OF** |
| THE CITY OF YOUNGSTOWN, *et al.* | ) **DEFENDANT OFFICERS MOSTELLA,** |
| | ) **FLETCHER, AND SPIVEY'S MOTION** |
| Defendants. | ) **FOR JUDGMENT ON THE** |
| | ) **PLEADINGS** |

## I.  INTRODUCTION

Plaintiffs bring suit against Defendants for failing to prevent the death of Ryan Weaver-Hymes at the hands of her husband, Jason Hymes ("Hymes"). As it specifically relates to the Patrol Officer Defendants, Plaintiffs claim that their failure to arrest Hymes constituted a violation of Mrs. Weaver-Hymes' substantive due process rights and state law. Despite these allegations, Plaintiffs' Amended Complaint fails to state a claim for a due process violation and the Patrol Officer Defendants are entitled to qualified immunity. Therefore, the Patrol Officer Defendants move this Court to grant their Motion for Judgment on the Pleadings.

## II.  BACKGROUND

For purposes of this Motion only, the Patrol Officer Defendants accept the factual allegations as true. In this regard, on February 13, 2019, Hymes and Mrs. Weaver-Hymes, went to Topsy's Lounge in Youngstown, Ohio and consumed alcohol. (Amd. Compl. at ¶ 28). For unknown reasons, the couple ended up in a fight that turned physical in the parking lot of Topsy's. (*Id.* at ¶ 29).  At 10:02 p.m., the couple left the bar and upon arriving at home the fight continued. (*Id.* at ¶¶ 30, 31). Mrs. Weaver-Hymes' 12 year-old daughter, R.W., was home when they arrived, but left shortly thereafter and walked to her cousin's house down the street. (*Id.* at ¶ 31).

840180

At 10:17 p.m., R.W. called 911 from her cell phone and reported that her parents were fighting. (*Id*. at ¶ 32). The Patrol Officer Defendants were dispatched at 10:24 p.m. and all immediately started making their way to the Hymes' home. (*Id*. at ¶ 33). Officers Spivey and Mostella arrived first, at 10:28 p.m., and went to the door and met Mrs. Weaver-Hymes. (*Id*. at ¶¶ 34, 35). Based upon their observations, the officers determined there was no cause for concern and cleared the scene at 10:32 p.m. (*Id*. at ¶¶ 34-36).

It is alleged that four minutes later, at 10:36 p.m., R.W. called 911 again from the cousin's house and reported that her parents were still fighting. (*Id*. at ¶ 37). Police were not dispatched to the scene for the second call. (*Id*. at ¶ 38).

R.W. spoke to her mother by phone at 10:51 p.m. (*Id.* at ¶ 39). Despite R.W. making several additional calls to her mother that went unanswered, no one called the police again until after midnight. (*Id*. at ¶¶ 39, 40).

At 12:06 a.m. on February 14, 2019, Hymes' sister-in-law called 911 to report that Mrs. Weaver-Hymes was unconscious and requested an ambulance. (*Id*. at ¶ 40).

On February 15, 2019, Mrs. Hymes-Weaver died from her injuries. *Id*. at ¶ 47.

Hymes was subsequently found guilty of his wife's murder and was sentenced to 23-years-to-life in prison. (*Id*. at ¶ 47).

Thereafter, on March 17, 2020, Plaintiffs filed suit based on Mrs. Weaver-Hymes' death. (Doc. No. 1). On July 6, 2020, Plaintiffs filed an Amended Complaint. (Doc. No. 21). As it relates to the Patrol Officer Defendants, Plaintiffs allege that their decision not to arrest Hymes in response to the first 911 call represents deliberate indifference to Mrs. Weaver-Hymes' right to be free of a state-created danger and the failure to ensure this right shocks the conscience. (*Id*. at ¶ 62). Plaintiffs also alleges that this decision was wanton, arbitrary, capricious, made in bad faith, and

served no legitimate or countervailing governmental interest. (*Id.* at ¶ 61). Moreover, Plaintiffs claim that the Patrol Officer Defendants were under a duty to arrest Hymes and their failure to do so breached "a duty to Mrs. Weaver-Hymes to provide professional, responsive law enforcement services, and to protect her from harm and particularly from domestic violence when they became aware of the existence or the substantial threat of such harm, as they did in this case." (*Id.* at ¶¶ 65, 66).

### III. LAW AND ARGUMENT

**A.** **Standard for Motion for Judgment on the Pleadings**

Pursuant to Rule 12(c), after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings. Fed.R.Civ.P. 12(c). The court employs an identical standard of review for Rule 12(c) Motions for Judgment on the Pleadings and Rule 12(b)(6) Motions to Dismiss for Failure to State a Claim. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir.2008). For the purpose of a motion for judgment on the pleadings, all well pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. *Id., citing JPMorgan Chase Bank v. Winget*, 510 F.3d 577, 581 (6th Cir.2007). A motion brought pursuant to Rule 12(c) is appropriately granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law. *Id.*

A complaint that is simply a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007). Similarly, a complaint is insufficient if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S.662, 678, 129 S.Ct. 1937, 1949 (2009). Pursuant to *Iqbal*, courts are instructed to apply a two-pronged inquiry to determine the sufficiency of a

4

840180

complaint under Rule 8. First, the court must identify the allegations in the complaint that are not entitled to the assumption of truth because they contain mere legal conclusions. *Id.* at 679, 129 S.Ct. at 1951. The courts are instructed to disregard these statements because "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id., citing Twombley* 550 U.S. at 555. Second, the court must consider the remaining factual allegations in the complaint to determine if they plausibly suggest an entitlement to relief. Even if the factual allegations support the plaintiff's claims, they do not establish a cause of action if there is an obvious, more likely explanation for the conduct. To survive a motion for judgment on the pleadings, the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 679, 129 S.Ct. at 1951.

**B.     There was No Violation of Substantive Due Process**

Plaintiffs have attempted to present a Fourteenth Amendment Due Process claim based on the allegation that the Patrol Officer Defendants did not arrest Hymes on the spot after the first 911 call. As an initial matter, the Due Process Clause is meant to protect people from actions of the State, not to ensure that the State protects them from each other. *Soper v. Hoben*, 195 F.3d 845, 852 (6th Cir.1999). Thus, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. While there are two (2) exceptions to this rule, the special relationship exception and the state-created danger exception, as demonstrated below, neither applies in this case.

**1.     Plaintiffs cannot demonstrate a special relationship**

The special relationship exception requires a showing that a victim of a third party's crime was in the custody or control of the state actor at the time of the crime. *May v. Franklin Cty. Bd. Of Com'rs*, 59 Fed.Appx. 786, 791 (6th Cir. 2003). Custody and/or control exists between the state

and the victim "through incarceration, institutionalization, or other similar restraints of personal liberty." *DeShaney v. Winnebago County Dept. of Social Svcs.*, 489 U.S. 189, 200, 109 S.Ct. 998, 1005 (1989). Accordingly, for the special relationship exception to apply, there must be plausible facts alleged that the Patrol Officer Defendants took Mrs. Weaver-Hymes into their custody or restrained her in such a manner that they had control of her movements and rendered her unable protect herself. *Id., see also May*, 59 Fed.Appx. at 791-792. As there are no factual allegations that would show Officers Spivey and Mostella took custody and/or control over Mrs. Weaver-Hymes when they spoke with her and Hymes at their residence,[1] Plaintiffs cannot establish the special relationship exception.

2. **Plaintiffs cannot demonstrate a state-created danger**

Liability under the state-created danger exception is predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence. *See Gazette v. City of Pontiac*, 41 F.3d 1061, 1065 (6th Cir. 1994). Here, Plaintiffs allege the Patrol Officer Defendants are liable based on an omission – the failure to arrest Hymes at the first contact – versus an affirmative act. An omission is insufficient to meet the threshold of a state-created danger. *See Cartwright v. City of Marine City,* 336 F.3d 487, 493 (6th Cir.2003); *Sargi v. Kent City Board of Education,* 70 F.3d 907, 912–13 (6th Cir.1995).

The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has consistently held that a police officer's failure to respond to reports of criminal activity and/or 911 emergency calls; failure to properly investigate criminal activity; and/or failure to detain a criminal offender do not represent affirmative acts for purposes of establishing a state-created danger. *See e.g.*, *Sheets v. Mullins*, 287 F.3d 581, 588-89 (6th Cir.2002) (failing to pursue and investigate a domestic-

---

[1] As Officer Fletcher remained in his cruiser during the response to R.W.'s first 911 call, he certainly did nothing to take custody or control over Mrs. Weaver-Hymes.

6

840180

disturbance call was not an affirmative act); *Peach v. Smith Cty.*, 93 Fed.Appx. 688, 693 (6th Cir.2004) (failing to respond to a call informing police that a woman battered by her husband was returning to spend time with him and that he had a gun was not an affirmative act); *Brooks v. Knapp*, 221 Fed.Appx. 402, 407 (6th Cir.2007) (officers' failure to detain or remove husband after receiving information about domestic violence did not represent a state created danger); *Bukowski v. City of Akron*, 326 F.3d 702, 709 (6th Cir.2003) (police not liable when they returned a mentally disabled woman to home of a man who previously assaulted her, and who then raped her); *Jones v. Union Cnty*, 296 F.3d 417, 431 (6th Cir.2002) (failure to serve *ex parte* order of protection on an abusive spouse was not an affirmative act, despite lengthy record of prior complaints to police about abusive spouse's conduct).

In *Brooks v. Knapp*, the decedent Brenda Hernandez and her husband Gilbert Hernandez had a long history of domestic violence, protection orders, and other disputes, resulting in multiple instances of police involvement. 221 Fed.Appx. at 404-405. On February 10, 2001, police responded to the Hernandez's home after receiving a 911 hang up call. *Id.* at 405. Three (3) officers arrived and found that Mrs. Hernandez had been physical assaulted and that Mr. Hernandez, who appeared drunk or on drugs, had ripped the phone out of the wall when she tried to call for help. *Id.* The police detained Mr. Hernandez briefly by putting him in the back of the car, but did not handcuff him and allowed him to make phone calls. *Id.* They released him shortly thereafter and told Mrs. Hernandez that an extra patrol car would be on duty to protect her. *Id.* A few hours later, Mr. Hernandez broke into the home, killed Mrs. Hernandez, and then killed himself. *Id.* Mrs. Hernandez's parents filed a claim against the police for violations of Mrs. Hernandez's substantive due process violations by failing to arrest and remove Mr. Hernandez. *Id.*

In rejecting the substantive due process claim, the Sixth Circuit found that the officers'

failure to do anything other than briefly detain Mr. Hernandez was not actionable. *Id*. at 407. Specifically:

> Here, ***officers who merely depart from the scene of a domestic violence call without having taken steps to reduce the risk of harm cannot be held liable***. Instead, they must have done something affirmative to increase the harm beyond that of which they were already cognizant.
>
> ***This is so, even where officers can be seen not only to have ignored or disregarded the risk of injury, but to have condoned it***. In *Jones, supra*, police officers arrived on the scene shortly before the start of a drag race. One of the officers told one of the drivers to go ahead and have the race. A spectator was killed when a driver lost control of his car. The district court dismissed the suit brought on behalf of the victim's estate, which alleged, inter alia, that the officers were culpable for having created a "state-created danger."
>
> Affirming the dismissal, this court held that the officers' acquiescence in the drag race had not amounted to an affirmative act giving rise to a state-created danger. The decedent had, by being and remaining a spectator, already exposed herself to the risk of injury. The officers' action or inaction, the court held, had not made her "more vulnerable" to the risk.
>
> In the instant case, plaintiffs claim the defendant officers increased the decedent's vulnerability to danger when they failed to arrest Mr. Hernandez. Plaintiffs also point out that Mrs. Hernandez relied on the officers' assurances that additional patrols would be provided and consequently remained at her home on the night before her death. But, as the Supreme Court stated in *DeShaney,* no "affirmative duty to protect arises … from the State's … expressions of intent to help" an individual at risk. The affirmative assurance of additional patrols was not sufficient to increase Mrs. Hernandez's general vulnerability to harm. Consequently, ***plaintiffs' state-created danger claim, either based on the officers' failure to arrest Mr. Hernandez or their assurances of additional patrols to Mrs. Hernandez, fails***.

*Id*. (internal citations omitted, ***emphasis*** added).

The present case is identical to *Brooks* – Plaintiffs are attempting to create liability for the Patrol Officer Defendants based upon their failure to arrest Hymes. As the Sixth Circuit has squarely rejected this theory, Plaintiffs are unable to proceed under the state-created danger exception. Therefore, as neither exception applies, the Patrol Officer Defendants are entitled to

8

judgment in their favor on Plaintiffs' Substantive Due Process Claims.

C.     **The Patrol Officer Defendants are Entitled to Qualified Immunity**

Based on the foregoing, it follows that the Patrol Officer Defendants are immune from 42 USC § 1983 liability. The Supreme Court has stated that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). In order to determine whether a 42 USC § 1983 claim against these Defendants should be dismissed for qualified immunity, this Court must undertake the following analysis: "the first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question whether the right was clearly established must be considered." *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 2156 (2001).

Here, the Patrol Officer Defendants retain their qualified immunity because they used their discretion in responding to the 911 call. In doing so, they did not violate a clearly established statutory or constitutional right. Section 1983 claims are limited by the qualified immunity exception, such that a police officer will be shielded from liability so long as the officer acted under the objectively reasonable belief that his or her actions were lawful. *Ahlers v. Schebil*, 188 F.3d 365, 372-373 (6th Cir. 1999), *citing Harlow*, 457 U.S. at 815-819, 102 S.Ct. at 2736-39. Thus, a successful §1983 plaintiff must establish that the defendant officer acted knowingly or intentionally to violate constitutional rights such that mere negligence or recklessness is insufficient. *Ahlelrs*, 188 F.3d at 373.

The plaintiff bears the burden of establishing that an individual defendant is not entitled to qualified immunity. *Barrett v. Steubenville City Schools,* 388 F.3d 967, 970 (6th Cir. 2004). To

overcome qualified immunity, the plaintiff must show that: 1) a constitutional right has been violated; and 2) that at the time of the alleged violation case law clearly established that a reasonable official in the defendant's position should have known that their conduct would violate the constitution. *Pray v. Sandusky*, 49 F.3d 1154, 1157 (6th Cir.1995). "The qualified immunity standard 'gives ample room for mistaken judgment' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 537 (1991). Thus, the qualified immunity analysis requires that only the facts known to the officer at the time of the alleged violation are to be considered.

As established above, the Patrol Officer Defendants are entitled to qualified immunity under the first prong because their conduct did not violate the Fourteenth Amendment. In short, neither the special relationship exception nor the state-created danger exception apply and, as a result, the Substantive Due Process Clause could not be violated. Thus, the Patrol Officer Defendants are entitled to qualified immunity under the first prong.

Under the second prong of qualified immunity, Plaintiffs must point to clearly established case law that would demonstrate "beyond debate" that every reasonable officer in the position of the Patrol Officer Defendants would know their conduct violated the Fourteenth Amendment. *Stanton v. Sims*, 571 U.S. 3, 6, 134 S.Ct. 3, 5 (2013). An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard,* 572 U.S. 765, 778-779, 134 S.Ct. 2012, 2023 (2014).

Here, there is no case law that would establish "beyond debate" that every reasonable officer in the position of the Patrol Officer Defendants would have known that their actions were unconstitutional. In fact, the case law cited above indicates quite clearly that their conduct did not

10

violate the Constitution. As a result, Plaintiffs cannot show that the Patrol Officer Defendants were placed on notice via clearly established case law that their conduct under these specific circumstances – beyond debate – violated the Constitution. For this additional reason, the Patrol Officer Defendants are entitled to qualified immunity.

**D.** **"Wanton and Reckless Misconduct Under Ohio Law" Is Not a Cognizable Claim**

Plaintiffs identify their second cause of action, allegedly the state law cause of action as "Wanton and Reckless Misconduct." Wanton and reckless conduct is "not a distinct cause of action, but an element of various other causes of action." *Bradley v. City of Cleveland*, N.D.Ohio No. 1:11CV781, 2012 WL 775106, *3, *citing Griggy v. Cuyahoga Falls*, 9th Dist. Summit App. No. 22743, 2006-Ohio-252. *See also Cincinnati Ins. Co. v. Oancea*, 6th Dist. No. L-04-1050, 2004 Ohio-4272, at ¶ 17, *citing* Prosser & Keeton on Torts, 5 Ed. 1984. Wanton and reckless misconduct cannot stand as a ground for relief in Ohio, therefore Plaintiffs' second cause of action must be dismissed.

**E.** **The State Law Claim Still Fails Because the Patrol Officer Defendants Were Not Duty-Bound to Act**

In the context of the state law claim, Plaintiffs have again alleged that the Patrol Officer Defendants acted wantonly or recklessly in failing to arrest Hymes. This is the same duty that has been refuted in the federal claim set out above. A plaintiff still has the burden of establishing that the defendant political subdivision employee owed the plaintiff a duty under law or statute. *See Estate of Graves v. Circleville,* 124 Ohio St.3d 339, 2010-Ohio-168 at ¶¶24-25 (if a claimant cannot establish the existence of a duty, the political subdivision's employee is insulated from liability even in the face of allegations of wanton and reckless conduct). There is no common law or statutory duty with a private right of action requiring police to arrest someone. Accordingly, Plaintiffs cannot simply rely upon their claims to form a duty, but instead must show that the Patrol

Officer Defendants owed a direct duty to Mrs. Weaver-Hymes under the common law or per statute. *See also Bush v. Ashland*, 5th Dist. No. 09-CA-25, 2010-Ohio-1732, at ¶31-32.

Per the Ohio Supreme Court's decision in *Graves*, the absence of a statute creating a private cause of action against the political subdivision employee precludes the imposition of a statutory duty. *See Schneider v. Kumpf*, 58 N.E.3d 1220, 2016-Ohio-5161, at ¶¶73-74. Here, the facts and allegations stated by the Amended Complaint do not establish a statutory duty directly owed to Mrs. Weaver-Hymes.

With respect to a common law duty, the Ohio Supreme Court has declared that a governmental defendant "just like any private defendant, remains protected by traditional tort concepts of duty, including foreseeability and pertinent public-policy considerations." *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, at ¶38. In doing so, the Ohio Supreme Court in *Wallace* set forth the same sentiments of the *Graves* Court by noting that conventional negligence principles, such as duty, protect government defendants from "becoming the de facto guarantor of every injury somehow attributable to the actions of a state tortfeasor." *Id*. at ¶38. The *Wallace* Court proceeded to hold that tort law generally requires the existence of a "special relationship" between the governmental actor and the injured party to establish a legal duty. *Id.*, *see also Littleton v. Good Samaritan Hosp. & Health Ctr.*, 39 Ohio St.3d 86, 92 529 N.E.2d 449 (1988).

As described thoroughly above, there was no special relationship formed between the Patrol Officer Defendants and Mrs. Weaver-Hymes. *See also Burr v. Ohio State Highway Patrol*, 10th Dist. No. 12AP-26, 2012-Ohio-4906, at ¶20; *Bush v. Ashland*, 5th Dist. No. 09-CA-25, 2010-Ohio-1732. As a result, the Patrol Officer Defendants did not owe a direct legal duty to Mrs. Weaver-Hymes under the circumstances. Because there was no common law or statutory duty

12

owed to Mrs. Weaver-Hymes, the state law claims against the Patrol Officer Defendants fail as a matter of law and should be dismissed.

## IV. CONCLUSION

Based upon the foregoing, the Amended Complaint fails to set forth any viable claim against the Patrol Officer Defendants. Thus, judgment on the pleadings is appropriate and all claims asserted against Patrol Officer Defendants should be dismissed with prejudice.

Respectfully submitted,

*/s/ Audrey K. Bentz*
STEVEN G. JANIK (0021934)
AUDREY K. BENTZ (0081361)
ROBERT T. GLICKMAN (0059579) Of Counsel
JANIK L.L.P.
9200 South Hills Blvd., Suite 300
Cleveland, Ohio 44147
Tel: (440) 838-7600 * Fax: (440) 838-7601
Email: Steven.Janik@janiklaw.com
　　　　Audrey.Bentz@janiklaw.com
　　　　Robert.Glickman@janiklaw.com

*Attorneys for Defendants Officer Malik Mostella, Officer Jay Fletcher, and Officer Daniel Spivey*