**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **LaDawnda Smith, et al.,** | ) | **CASE NO.   4:20 CV 579** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **City of Youngstown, et al.,** | ) | |
| | ) | **Memorandum of Opinion and Order** |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**INTRODUCTION**

This matter is before the Court upon (1) Defendant City of Youngstown's Motion for Judgment on the Pleadings (Doc. 26), (2) Defendants Rivera and Kennedy's Motion for Judgment on the Pleadings (Doc. 27), and (3) Defendants Mostella, Fletcher, and Spivey's Motion for Judgment on the Pleadings (Doc. 30). This is a § 1983 action arising out of the death of Ryan Weaver-Hymes and the City of Youngstown Police Department's response to a 911 call. For the reasons that follow, the Court GRANTS all three motions.

**FACTS**

Plaintiffs LaDawnda Smith and R.W. (collectively, "plaintiffs") filed their first amended complaint ("Complaint") against defendants the City of Youngstown; Officer Carlos Rivera; Officer Daniel Spivey; Officer Jay Fletcher; Officer Malik Mostella; Officer Richard Kennedy; Police Officer John Does 1 and 2; Sophisticated Lady, LLC; and Jane Doe.[1]

For purposes of ruling on the pending motion, the facts asserted in the Complaint are presumed to be true.

On February 13, 2019, Ryan Weaver-Hymes ("Weaver-Hymes") and her husband, Jason Hymes ("Hymes") visited Topsy's Lounge, a bar owned by defendant Sophisticated Lady, LLC. Topsy's bartender, defendant Jane Doe, served alcoholic beverages to Weaver-Hymes and Hymes over the course of a two-hour period. Just prior to 10:00 p.m., Weaver-Hymes and Hymes left Topsy's Lounge. They entered Hymes' vehicle and Hymes subsequently began to beat Weaver-Hymes. Weaver-Hymes fled the vehicle, but Hymes continued to beat her in Topsy's parking lot.

Around 10:02 p.m., Weaver-Hymes persuaded Hymes to stop hitting her and they returned to the vehicle. They drove to their residence at 902 Alameda Avenue ("the residence"). R.W. was at the residence when Weaver-Hymes and Hymes arrived. Upon their arrival, Hymes continued to beat Weaver-Hymes. Weaver-Hymes urged R.W. to flee the residence. R.W. walked to a nearby relative's home.

Around 10:17 p.m., R.W. called 911 on her cell phone. She reported that Hymes was

---

[1] R.W. is the minor child of Ryan Weaver-Hymes. LaDawnda Smith is the guardian of R.W. and the administrator of Ryan Weaver-Hymes' estate.

beating Weaver-Hymes and requested assistance.  The Youngstown Police dispatched three officers to the residence: Officers Spivey, Mostello, and Fletcher ("Patrol Defendants").  Officers Spivey and Mostello went to the door of the residence, while Officer Fletcher remained in his police vehicle.  When Officers Spivey and Mostello arrived at the door of the residence, Weaver-Hymes was visibly battered and Hymes had blood on his clothing.  The side and interior of Hymes' vehicle was stained with blood and a bloody napkin was in the driveway.  Officers Spivey and Mostello were at the residence for four minutes.  During these four minutes, Patrol Defendants did not arrest Hymes, remove him from the residence, or otherwise intervene.  They also did not interview R.W.  The officers left the scene at 10:32 p.m.

At 10:36 p.m., R.W. placed a second 911 call, reporting that Hymes was still beating Weaver-Hymes.  Either defendant Rivera or Kennedy ("Dispatch Defendants") instructed the 911 call center operator not to dispatch any police officers to the residence.

At some point between 10:51 p.m. and 12:00 a.m., Weaver-Hymes became unresponsive.  At 12:06 a.m., Hymes' sister-in-law called 911 to report that Weaver-Hymes was unconscious.  An ambulance was dispached and transported Weaver-Hymes to a hospital for treatment.  On February 15, 2019, Weaver-Hymes died as a result of the trauma she sustained from Hymes.  In October 2019, Hymes was convicted of murder, aggravated assault, and domestic violence in connection with the death of Weaver-Hymes.

The Complaint contains three claims for relief.  Count One alleges a violation of 42 U.S.C. § 1983 for a deprivation of substantive due process.  Count Two is a wrongful death

action brought under state law.² These claims are asserted against all defendants, except for Sophisticated Lady, LLC and Jane Doe. Count Three is a state law claim for dram shop liability and is asserted against Sophisticated Lady, LLC and Jane Doe.

This matter is now before the Court upon the Motions for Judgment on the Pleadings of defendants the City of Youngstown, Rivera, Kennedy, Fletcher, Mostella, and Spivey. The moving defendants all seek dismissal on the basis of failure to state a claim upon which relief can be granted. Plaintiffs oppose these Motions.

**STANDARD OF REVIEW**

A "motion for judgment on the pleadings under Rule 12(c) is generally reviewed under the same standard as a Rule 12(b)(6) motion." *Mellentine v. Ameriquest Mortg. Co.*, 515 Fed.Appx. 419, 424 (6th Cir. 2013) (citing *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001)). "For purposes of a motion for judgment on the pleadings, all well-pleaded allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

Thus, "[w]e assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 335 Fed.Appx 587, 588 (6th Cir. 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the 'bare assertion of legal

---

² In the Complaint, this Count is captioned as "wanton and reckless misconduct." However, plaintiffs have clarified that Count Two is a state law claim for wrongful death.

4

conclusions' as enough, nor does it 'accept as true . . . unwarranted factual inferences." *Gritton v. Disponett*, 332 Fed.Appx. 232, (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997)). As outlined by the Sixth Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Thus, *Twombly* and *Iqbal* require that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face based on factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 570; *Iqbal,* 556 U.S. at 678. The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**ANALYSIS**

**I.  Federal Claim (Count One)**

The Complaint contains one count under 42 U.S.C. § 1983. Count One alleges a violation of Weaver-Hymes' substantive due process rights in connection with her death.

**(A) Officers Rivera and Kennedy – Dispatch Defendants**

Plaintiffs assert their § 1983 claim against defendants Rivera and Kennedy ("Dispatch Defendants") in their individual capacities. Plaintiffs allege that Dispatch Defendants violated

5

Weaver-Hymes' substantive due process rights when they instructed the 911 call center operator not to dispatch police officers to the residence after the second 911 call. Dispatch Defendants argue that plaintiffs have not plausibly alleged a substantive due process violation. They also assert qualified immunity.

*(1) Substantive Due Process*

In order to prevail on a § 1983 claim, a plaintiff must prove 1) the deprivation of a right secured by the Constitution or laws of the United States which was 2) caused by a person acting under the color of state law. *Winkler v. Madison County*, 893 F.3d 877, 890 (6th Cir. 2018) (citations omitted). Specific to this case, the Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. However, the Due Process Clause "does not impose on the state an affirmative duty to protect individuals against private acts of violence." *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). Rather, the Due Process Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney*, 489 U.S. at 195. Accordingly, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197.

The Sixth Circuit has recognized two exceptions to this rule. *Hudson v. Hudson*, 475 F.3d 741, 745 (6th Cir. 2007). The first exception occurs when an individual is placed in the custody of the state. *Engler*, 862 F.3d at 575. Indeed, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 103 U.S.

at 199-200.

The second exception is the state created danger doctrine. Under this doctrine, state actors may be liable if their "affirmative acts . . . either create or increase the risk that an individual will be exposed to private acts of violence." *Engler,* 862 F.3d at 575 (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)). To establish liability under this exception, a plaintiff must show: "(1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff." *Estate of Romain v. City of Grosse Pointe Farms,* 935 F.3d 485, 491-492 (6th Cir. 2019) (quoting *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003).

As an initial matter, the parties agree that the custody exception does not apply in this case. However, plaintiffs argue that the state created danger exception does apply. Plaintiffs assert that Dispatch Defendants "took the deliberate and affirmative decision not to respond" to the second 911 call placed by R.W. They maintain that Dispatch Defendants' interference with the normally automatic dispatch of police officers amounts to an affirmative act that triggers that state created danger exception. Dispatch Defendants argue that plaintiffs have not plausibly alleged a state created danger.

Upon review, the Court agrees with Dispatch Defendants. The Complaint fails to properly allege the first requirement of the state created danger exception: an affirmative act by the state that created or increased the risk of harm. While undeniably tragic, Dispatch

Defendants did not create the dangerous situation Weaver-Hymes was in.  Rather, they failed to dispatch police officers to the residence after the second 911 call.  It is well-established that a failure to act is not an affirmative act under the state created danger exception.  *Cartwright*, 336 F.3d at 493; *Jones v. Union County*, 296 F.3d 417, 431 (6th Cir. 2002) (failing to serve a protection order on an abusive spouse was not an affirmative act); *Weeks v. Portage County Executive Offices*, 235 F.3d 275, 278-279 (6th Cir. 2000) (failure to call an ambulance for an injured person was not an affirmative act).  Moreover, there is "no constitutional right to state-provided rescue services."  *Hermann v. Cook*, 114 Fed.Appx. 162, 165 (6th Cir. 2004).  Thus, Dispatch Defendants' choice to not dispatch police officers to the residence cannot serve as a basis for a substantive due process violation.

Plaintiffs argue that Dispatch Defendants' response to the second 911 call was more than a mere failure to act.  They assert that the 911 call center operator was fully prepared to dispatch police to the residence until Dispatch Defendants instructed her not to.  They claim this "deliberate intervention" with the City of Youngstown's protocol for handling domestic violence calls constitutes an affirmative act.  The Court disagrees.  *See May v. Franklin County Com'rs*, 437 F.3d 579, 586 (6th Cir. 2006) (finding no affirmative act despite "persuasive evidence that appellees failed to follow their established procedure for domestic violence calls when fielding [the victim's] first 911 call, and that appellees may also have underestimated the urgency of [the victim's] situation during the second 911 call.")  *See also Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 763 (6th Cir. 2010) ("We have been hesitant to find that the police's response to a 911 call is an affirmative act that increases the danger to the victim.")

Moreover, even if the Court were to construe Dispatch Defendants' decision not to

dispatch a police officer to the scene as an "act," it still would not meet the requirements of the state created danger exception. Indeed, the Sixth Circuit has held that the proper inquiry is not whether the officer "acted" or not, but whether the officer's conduct created or increased the risk of harm. *Koulta v. Merciez*, 477 F.3d 442, 445-446 (6th Cir. 2007) ("Rather than focusing on the often metaphysical question of whether officer behavior amounts to affirmative conduct or not, we have focused on 'whether [the victim] was safer before the state action than he was after it.'")(quoting *Cartright*, 336 F.3d at 493).

Here, plaintiffs have not plausibly alleged that Dispatch Defendants' conduct created or increased the risk of harm to Weaver-Hymes. The danger of Weaver-Hymes being beaten by Hymes preceded the decision not to dispatch police officers. Dispatch Defendants clearly did not play a role in the creation of this dangerous situation. Nor can it be said that their conduct increased the risk that Hymes would continue to beat Weaver-Hymes. Indeed, Hymes was not even aware that Dispatch Defendants had made the choice not to dispatch police.

It is possible that Weaver-Hymes' death may have been prevented had Dispatch Defendants allowed police officers to be sent to the residence a second time. However, this arguably poor response to the 911 call did not create the risk of harm which ultimately killed Weaver-Hymes. *See May,* 437 F.3d at 584. *See also Koulta*, 477 F.3d at 446-447 ("And much as the officers were in a position to head off the tragedy that materialized minutes later . . . their conduct was [not] an affirmative risk-creating act.") Plaintiffs' characterization of Dispatch Defendants' failure to act as an "act" is an attempt to hold Dispatch Defendants accountable for a danger that they did not create. That Dispatch Defendants could have allowed for police officers to be dispatched a second time does not transform their failure to do so into an affirmative act

giving rise to a due process violation.

Plaintiffs rely on the Eighth Circuit decision of *Freeman v. Ferguson,* 911 F.2d 52 (8th Cir. 1990) to support their characterization of Dispatch Defendants' decision to "thwart a normal police response" as an affirmative act. In *Freeman*, the victim was murdered by her husband, despite having a restraining order against him. *Id.* at 53. The plaintiffs asserted that the chief of police had prevented police officers from enforcing this restraining order because the husband was a close friend of his. *Id*. at 54. The Eighth Circuit allowed the plaintiffs to amend their complaint to articulate how the police chief's actions placed the victim in a more vulnerable position because such interference "possibly ratifi[ied] or condon[ed] such violent actions." *Id.* at 54-55.

As an initial matter, *Freeman* has no binding precedential value on this Court. Morever, the Eighth Circuit in *Freeman* merely afforded the plaintiffs an opportunity to amend the complaint. *Id.* at 55. The Eighth Circuit did not explicitly find, as plaintiffs suggest, that the police chief's actions of prohibiting the enforcement of a restraining order would constitute a due process violation.

In addition, the Court finds *Freeman* to be distinguishable from the facts presented here. In this case, plaintiffs do not allege that Dispatch Defendants ratified or condoned the conduct of Hymes. There are no allegations that Hymes had received any assurance by Dispatch Defendants that if he continued to perpetrate violence against Weaver-Hymes, law enforcement would not respond. Indeed, plaintiffs themselves argue that Hymes "clearly feared" the police's return after the first 911 call response. In the state created danger context, the critical issue is whether "the officers did anything affirmative to embolden the person causing harm to another."

*Brooks v. Knapp*, 221 Fed.Appx. 402, 407 (6th Cir.2008) (internal quotations omitted). Here, there are no allegations that Dispatch Defendants had any direct contact with Hymes or did anything to embolden him to continue his assault on Weaver-Hymes.[3]

This is unquestionably a tragic case. However, because plaintiffs have not established the existence of an affirmative act on the part of Dispatch Defendants, plaintiffs' substantive due process claims against Dispatch Defendants must fail.[4]

*(2) Qualified Immunity*

Dispatch Defendants alternatively argue that, assuming plaintiffs could establish the violation of a constitutional right, they are entitled to qualified immunity. Where, as here, the individual defendants assert qualified immunity, the government officials may not be held liable if 1) the officers did not violate any constitutional guarantees or 2) the guarantee, even if violated, was not clearly established at the time of the alleged misconduct. *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017). *See also Maye v. Klee*, 915 F.3d 1076, 1082 (6th Cir. 2019) ("In analyzing whether an official is entitled to qualified immunity, we must make two determinations: first, whether the plaintiff's version of the facts alleges the

---

[3] Plaintiffs also cite two district court cases in support of their argument. *See Lozano v. Baylor University*, 408 F.Supp.3d 861 (W.D. Tex. 2019); *Estate of Romain v. City of Grosse Pointe Farms*, 2015 WL 1276278 (E.D. Mich. 2015). The Court has carefully reviewed both of these cases and finds them distinguishable. Indeed, both *Lozano* and *Estate of Romain* contained allegations that the state actor had explicitly or implicitly indicated to the third-party assailant that no action would be taken to prevent or stop their violence. Here, as discussed above, there are no such allegations.

[4] Because the first prong has not been met, the Court need not consider the second and third prongs of the state created danger exception. *Jackson v. Schultz*, 429 F.3d 586, 591 (6th Cir. 2005) ("Because the first prong is not met it is unnecessary to consider the second and third prongs.")

11

deprivation of a constitutional right; and second, whether that right was clearly established such that a reasonable official would have known his actions were unconstitutional.")

As discussed above, the Court has already determined that Dispatch Defendants did not violate Weaver-Hymes' substantive due process rights. Assuming, *arguendo,* that a constitutional violation has occurred, Dispatch Defendants are still entitled to qualified immunity because plaintiffs have not shown that the alleged conduct violated a clearly established right.

Plaintiffs maintain that because "the right to be free from state created danger" is clearly established, Dispatch Defendants are not entitled to qualified immunity. Plaintiffs argue that despite there not being any federal case law finding a violation of due process rights under similar circumstances, "the law does not require a tailor made fit between past case law and the facts at bar."

The Court agrees that, at a general level, the "right to be free from state created danger" is clearly established. *Lipman v. Budish*, 2020 WL 5269826, *18 (6th Cir. 2020). However, the Supreme Court has repeatedly emphasized that qualified immunity analysis requires a more "particularized" approach than simply asserting that a right exists. *White v. Pauly*, 137 S.Ct. 548, 552 (2017) ("As this Court explained decades ago, the clearly established law must be particularized to the facts of the case.")(internal quotations omitted). The Supreme Court has explained that such an approach is necessary, because plaintiffs otherwise "would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (internal citations and quotations omitted).

"A plaintiff can establish that a right was clearly established by citing to cases of controlling authority in their jurisdiction at the time of the incident or a consensus of cases of

12

persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Matthews v. Copeland*, 2019 WL 3286176, *2 (6th Cir. 2019)(internal quotations omitted)  Here, plaintiffs fail to identify any controlling caselaw from the Sixth Circuit or the Supreme Court that would support a finding that Dispatch Defendants were on notice that their conduct would violate Weaver-Hymes' constitutional rights.  Indeed, plaintiffs themselves concede they "could find not one case in which a federal court directly addressed the question of whether the deliberate decision to ignore a call for service denied the caller substantive due process."

The Court acknowledges that plaintiffs are not required to find a case that is "on all fours" with their facts or a "prior, precise situation" in order to overcome qualified immunity. *Guertin v. State*, 912 F.3d 907, 932 (6th Cir. 2019).  Plaintiffs must, however, "generally identify a case with a fact pattern similar enough to have given fair and clear warning to officers about what the law requires." *Id.*  Plaintiffs have not done so.  Rather, plaintiffs reference cases in which the Sixth Circuit acknowledged that the right to be free of state created danger exists.  In each of these cases, the Sixth Circuit found that the state actor had engaged in some affirmative act that increased the risk of danger to the victim.  *See Nelson v. City of Madison Heights*, 845 F.3d 695 (6th Cir. 2017), *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998), *Lipman v. Budish*, 2020 WL 5269826, *18 (6th Cir. 2020).  None of these cases involved the facts presented here – where the police did not take any action and chose to ignore a 911 call for help.[5]

---

[5] Indeed, case law generally indicates the opposite – that there is no constitutional right to be rescued.  *See Jackson v. Schultz,* 429 F.3d 586, 590 (6th Cir. 2005)("It is not a constitutional violation for a state actor to . . . fail to rescue those in need."); *Hermann,* 114 Fed.Appx. at 165.  Thus, it cannot be said that existing precedent gave "fair and clear warning" to Dispatch Defendants that their conduct could violate Weaver-Hymes' constitutional rights.

Plaintiffs primarily rely on the Sixth Circuit's recent decision of *Lipman v. Budish*, 2020 WL 5269826 (Sept. 4, 2020) in support of their argument that Dispatch Defendants are not entitled to qualified immunity. In *Lipman,* the Sixth Circuit found that the plaintiffs had plausibly alleged that the state actors had engaged in an affirmative act that increased the victim's risk for private violence, to wit: interviewing a six-year-old child regarding abuse in front of her abusers. *Id.* at *15-16. The Sixth Circuit denied the state actors' assertion of qualified immunity, reasoning that the right to be free from state created danger was clearly established. *Id.* at *18.

In its discussion of qualified immunity, the Sixth Circuit noted that qualified immunity often applies under the state created danger context where "the plaintiff failed to show that state actors actually created the danger – either by increasing the risk of harm to third parties by its affirmative conduct or by doing something that endangers a discrete member or group of the public." *Id.* at *18 (internal quotations omitted). Here, as discussed in detail above, plaintiffs have failed to show that Dispatch Defendants played any role in the creation of the danger to Weaver-Hymes or engaged in any affirmative conduct. While the *Lipman* decision confirms that the right to be free from state created danger exists, simply pointing to this case, without showing that Dispatch Defendants actually created the danger or engaged in affirmative conduct, is not enough to overcome the assertion of qualified immunity.

Accordingly, because plaintiff has failed to identify a violation of any clearly established constitutional right, Dispatch Defendants are entitled to qualified immunity. Count One is dismissed as to defendants Rivera and Kennedy.

**(B) Fletcher, Mostella, & Spivey – Patrol Defendants**

14

In the Complaint, plaintiffs also assert § 1983 claims against defendants Fletcher, Mostella, and Spivey in their individual capacities ("Patrol Defendants").  Plaintiffs now concede that these claims should be dismissed.  Accordingly, Count One is dismissed as to defendants Fletcher, Mostella, and Spivey.[6]

**(C) City of Youngstown**

Plaintiffs also bring their § 1983 claim against the City of Youngstown, Rivera, Kennedy, and the Police Officer John Doe defendants in their official capacities.  When a plaintiff sues local government officials and employees in their official capacity, the suit is treated as one against the municipality.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

A municipality can be liable under § 1983 when an official "policy or custom" caused a violation of the plaintiff's constitutional rights.  *Monell v. Dep't of Soc. Servs*. 436 U.S. 658 (1978).  However, there can be no liability under *Monell* without an underlying constitutional violation.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). *See also North v. Cuyahoga County*, 754 Fed.Appx 380, 389 (6th Cir. 2018) ("There must be a constitutional violation for a § 1983 claim against a municipality to succeed — if the plaintiff has suffered no constitutional injury, his *Monell* claim fails."); *Griffith v. Franklin County, Kentucky*, 2020 WL 5627106, *19 (6th Cir. 2020).

Here, as discussed above, plaintiffs have failed to allege facts demonstrating a violation of Weaver-Hymes' constitutional rights.  As such, the *Monell* claim against the City of

---

[6] The Court also dismisses Count One against the two unnamed Police Officer John Does.  In the Complaint, plaintiffs group the Police Officer John Does with the other three Patrol Defendants.  Plaintiffs now concede that Patrol Defendants did not violate Weaver-Hymes's substantive due process rights.

Youngstown must fail.

Moreover, even if plaintiffs had alleged facts demonstrating a violation of Weaver-Hymes' constitutional rights, because they have not shown that the alleged conduct violated a clearly established right, the *Monell* claim still fails. Plaintiffs' theory of liability against the City of Youngstown is that the conduct of Dispatch Defendants is the result of the City of Youngstown's failure to train and discipline officers who do not comply with its established domestic violence response policy. When a claim for municipal liability is based on a "failure to train employees," there must be a showing of the municipality's "deliberate indifference to constitutional rights." *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994 (6th Cir. 2017). But "a municipal policymaker cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established." *Id.* (internal quotations omitted) *See also Tlapanco v. Elges*, 969 F.3d 638, 657 (6th Cir. 2020) ("This court has consistently held that a municipality cannot be held liable on a failure to train theory where a right was not clearly established.") As discussed above, there is no clearly established right to have a police officer dispatched in response to a 911 call. Therefore, it cannot be said that the City of Youngstown was deliberately indifferent to a potential constitutional violation.

Accordingly, Count One is dismissed as to the City of Youngstown and the individual defendants in their official capacities.

## II.  State Law Claims (Counts Two and Three)

In Count Two, plaintiffs assert a wrongful death action under Ohio law against the City

of Youngstown, Dispatch Defendants, and Patrol Defendants.[7] In Count Three, plaintiffs assert a claim under Ohio's Dram Shop statute against non-moving defendants Sophisticated Lady, LLC, and Jane Doe.

These remaining claims are purely state law claims between non-diverse parties. This Court, having dismissed all federal claims asserted in this case, declines to exercise supplemental jurisdiction over the remaining state law claims. *See Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–1255 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed"); *see also* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it ha[d] original jurisdiction"); *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F..App'x 580, 584-585 (6th Cir. 2011) (affirming decision of the district court to decline to exercise supplemental jurisdiction and to remand a removed action to state court after dismissal of federal claims). Accordingly, Counts Two and Three are dismissed without prejudice.

**CONCLUSION**

For the foregoing reasons, the moving defendants' Motions for Judgment on the Pleadings (Docs. 26, 27, 30) are GRANTED as to the federal claims contained in Count One.

---

[7] The Complaint asserts Count Two against defendants Rivera, Kennedy, and the John Doe police officers in both their individual and official capacities. As with the federal claims, state law claims asserted against a defendant in his official capacity are considered a claim against the municipality. *See Warner v. Wood County Sheriff's Dept.*, 2008 WL 4449450, *9 (N.D. Ohio Sept. 30, 2008) (citations omitted) ("Chapter 2744 of the Ohio Rev. Code provides that a suit against an employee of a political subdivision in the employee's official capacity constitutes a suit against the political subdivision.")

The Court also dismisses Count One against the Police Officer John Does.  The state law claims contained in Counts Two and Three are dismissed without prejudice.

        IT IS SO ORDERED.

                                              /s/ Patricia A. Gaughan
                                              PATRICIA A. GAUGHAN
                                              United States District Judge
                                              Chief Judge

Dated: 10/19/20